UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RIFKIN SCRAP IRON AND METAL COMPANY,
d/b/a West Branch Steel, RIFKIN REALTY
INVESTMENTS, LLC,

                       Plaintiffs,

v.                                            Case Number 06-12351-BC
                                            Honorable Thomas L. Ludington

OGEMAW COUNTY, ALLEN DEROCHER,

                       Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION**

Defendants Ogemaw County ("County") and Allen Derocher ("Derocher")'s motion for summary judgment [Dkt. # 37] of the second amended complaint is now before the Court. Plaintiffs Rifkin Scrap Iron and Metal Company and Rifkin Realty Investment LLC (collectively, "Rifkin")'s second amended complaint alleges a federal takings claim and procedural due process violations against both Defendants, arising out of circumstances surrounding a special use permit issued by Defendant County to Rifkin; the renewal, or lack thereof, of a vehicle dealer's license; and Defendants' later issuance of a stop work order for allegedly violating the conditions of the established special use permit. Defendants' motion for summary judgment primarily contends that Rifkin cannot establish a regulatory takings claim under the balancing test expounded in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978), and that Rifkin cannot establish a procedural due process violation because Defendants' actions were not deliberately or recklessly taken. Defendants also revive their arguments that Rifkin's claims are not ripe, Rifkin cannot establish a constitutionally-protected interest, Defendant County is entitled to governmental

immunity, and Rifkin cannot establish "causation in fact."

Rifkin filed a response [Dkt. # 40] and Defendants filed a reply [Dkt. # 41]. The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motions. Accordingly, it is **ORDERED** that the motions be decided on the papers submitted. *Compare* E.D. Mich. LR 7.1(e)(2).

I

On May 25, 2006, Rifkin commenced suit by filing a complaint [Dkt. # 1] in this Court. On December 21, 2006, pursuant to a stipulation and order, Rifkin filed an amended complaint [Dkt. # 13]. Pursuant to the Court's case management and scheduling order, Defendants filed a motion for summary judgment [Dkt. # 19-20] on August 31, 2007. Subsequent to a hearing on November 6, 2007, the Court directed the parties to provide supplemental briefing on certain issues [Dkt. # 27]. On May 21, 2008, after receiving supplemental briefing from the parties, the Court granted in part and denied in part Defendants' motion for summary judgment as to the first amended complaint, and directed Plaintiff to file a second amended complaint.

More specifically, in its order [Dkt. # 34], the Court outlined Rifkin's allegations of due process and equal protection violations under 42 U.S.C. § 1983, and a takings claim under the Fifth Amendment. The Court concluded that Defendants were entitled to summary judgment on Rifkin's equal protection cause of action because Rifkin had not identified any other persons or entities that were similarly situated and treated differently, nor had Rifkin advanced any evidence that there was an absence of any rational basis to support the zoning ordinance at issue or Defendants' actions.

However, the Court denied Defendants' motion for summary judgment as to Rifkin's takings

and due process claims.  Significantly, the Court noted that the lack of precision in Rifkin's first amended complaint arguably did not put Defendants on notice as to the nature of Rifkin's claims. Thus, the Court directed Rifkin to file a second amended complaint, specifying the legal theories it sought to advance to support its factual assertions, and issued an amended case management and scheduling order setting, inter alia, discovery and dispositive motion deadlines.

Rifkin's second amended complaint [Dkt. # 35], filed June 4, 2008, alleges two counts.  The first count is entitled, "Violation of 42 U.S.C. § 1983 - Illegal Taking."  Rifkin does not specify a particular federal right at issue, but states generally that, "Defendants deprived Plaintiffs of federally protected rights, privileges and immunities provided by federal law and the United States Constitution, entitling Plaintiffs to damages for Defendant's violation of 42 U.S.C. § 1983."  It is not clear whether Rifkin alleges a taking for which the Fifth Amendment requires "just compensation" or a taking by eminent domain in violation of the Due Process Clause of the Fourteenth Amendment.  *See Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 197 (1985).  Rifkin further contends that "Derocher is liable in his individual capacity because he acted in a manner *ultra vires* when he acted in violation of Plaintiffs' constitutional rights and engaged in unconstitutional acts after he should have become aware of the unconstitutionality and illegality of his actions."  Rifkin challenges what it characterizes as Defendants' "refusal to renew the WBS dealer's license and its issuance of a stop work order."  2d Am. Compl. ¶ 45. Rifkin alleges that Defendants' actions "had the practical effect of reversing the previous grant of the special use permit to WBS and depriving Plaintiffs of their investment made in reliance upon that special use permit." 2d Am. Compl. ¶ 46.

The second count is entitled, "violation of 42 U.S.C. § 1983 - Denial of Due Process."

Rifkin alleges that its due process rights were violated when:

> Defendants refused to renew the WBS dealer's license and issue their stop work order at a time when Defendants (but not Plaintiffs) were aware that Ogemaw County was on the verge of ceding jurisdiction over this zoning dispute to West Branch Township. Defendants were aware of the facts that this procedural vacuum would make their actions non-reviewable and therefore particularly damaging to these Plaintiffs.

2d Am. Compl. ¶ 54. In terms of relief for both counts, Rifkin seeks "their costs, attorney fees, interest, lost profits, and all other actual, compensatory, incidental, consequential, and exemplary damages as against both Defendants, jointly and severally. . . ."

II

The Court's previous order granting in part and denying in part Defendants' motion for summary judgment generally set out the facts of the case, however, the Court will largely repeat them here, along with any new details brought to light, as necessary for clarity:

Rifkin operates a business that purchases, transfers and sells recyclable metals. In 2002, Rifkin purchased a 2.5 acre property not far from Highway M-76 in Ogemaw County, which, at all relevant times, was zoned B-3, highway business district. The property is located next to a mobile home park and other residential properties. On September 5, 2002, Rifkin submitted an application for a special land use permit[1] to operate as an "open-air business," specifically, as a transfer station for recyclable metals. Under Defendant County's zoning ordinance ("CZO"), special land uses are

---

[1] The Michigan zoning enabling act, Mich. Comp. Laws § 125.581, et seq., establishes procedures for the enactment, amendment, and administration of zoning ordinances. The zoning act places discretionary authority to enact a zoning ordinance and to adopt a zoning map with the legislative body of a city or village. Mich. Comp. Laws § 125.584(4). Under the zoning act, the legislative body may amend a zoning ordinance by a text change or alter a zoning map through a rezoning. *Id.* The legislative body of a city or village may also have the discretionary authority to temper the effect of a zoning ordinance through special land use permits, *Id.* § 125.584a, or planned unit development, *Id.* § 125.584b. Further, the zoning board of appeals may grant administrative relief from the strict application of the ordinance in the form of land use variances. *Id.* § 125.585(9).

-4-

defined as the following:

> . . . those uses of land which are not essentially incompatible with uses permitted by a District, but possess characteristics or locational qualities which require individual review and discretion in order to avoid incompatibility with the character of the surrounding area, public services and facilities, and adjacent uses of land. . . .

CZO § 19.1; [Dkt #19-3].  The signatory to Rifkin's special use permit application agreed to the following:

> I hereby certify and agree that all use for which this application is made will conform to the data and information submitted with this application and Ordinances affecting Ogemaw County, Michigan.  It is further agreed that any deviation from the data submitted or the breach of any additional safeguards, conditions or requirements that the County Planning Commission may impose in granting this permit, shall constitute a violation of the Ogemaw County Zoning Ordinance and invalidate the permit granted.

[Dkt # 19-2].

On November 26, 2002, the planning commission for Defendant County and Defendant DeRocher held a public hearing on Rifkin's application.  Defendants state that assurances were sought at this meeting that the property would not be used as a "junkyard," although this information is not reflected in the meeting minutes.  Rather Defendant cites the following portions of an unofficial transcript [2]:

| | |
|---|---|
| Rifkin Representative: | Basically that's it uh if there are any other questions that need to be answered at this time. |
| Unidentified Speaker: | No any piles of scrap? |
| Rifkin Representative: | Piles of scrap.  Uh maybe Jeff can answer that |
| Unidentified Speaker: | Loose scrap just lying around |
| Rifkin Representative: | The idea is to keep no scrap on the ground.  It comes in it goes in |

---

[2] As the Court noted in its prior opinion and order, a secretary at the Ogemaw County prosecutor's office, Michelle Williams, attested that she has accurately and completely transcribed a recording of that meeting.  The transcript identifies the speakers, at best, by name, and the representative of Rifkin is hard to identify.  Also, one of the speakers is named John Williams, who may or may not have any relationship to the transcribing secretary.

|                         | the containers there maybe times where we get so much material in that it may sit there a day at most but it goes there is constant turn over of the material.  It's day pickups um into Saginaw. |
|---|---|

. . .

| Jerry Lehman: | If someone comes in with lets say a two-ton dump truck does he dump that inside? |
|---|---|
| Rifkin Representative: | Uh no that would be outside and then sorted and put into the appropriate containers that are housed outside. |
| Rifkin Representative: | Which is the same thing we are doing now |
| Rifkin Representative: | Right |
| Jerry Lehman: | I've been there.  I've also been to Bay City and Saginaw you know you've got your big heaps there of scrap and that's what I've |
| Rifkin Representative: | It's not that kind of operation.  We won't have that kind of situation. |
| Rifkin Representative: | This is a transfer |
| Rifkin Representative: | This is a transfer recycler where it is sorted for recycling so your not getting these large stock piles. |

. . .

| Adrian Dantzer: | Now the other location is going to be closed up is that it? |
|---|---|
| Rifkin Representative: | It will not operate as a scrap yard. |
| Rifkin Representative: | As far as I know I mean its I guess it's not really the issue here. I mean I don't really what the plans are. |
| Adrian Dantzer: | I know that's why I asked. |

. . .

| Adrian Dantzer: | As an issue we're going to have two close together. |
|---|---|
| John Williams: | Well my understanding is their Rifkin Steel is relocating their transfer scrap iron station to this facility. |

[Dkt. # 19-5].  Defendants emphasize that a junkyard is only allowed in an industrial zoning district

as a special use.  [Dkt. # 30-7]; CZO § 15.  Defendants also emphasize that a junkyard requires at

least six acres of land, cannot be closer than 200 feet to a residential area, cannot be closer than 100

feet to a public street, and must be enclosed by a fence, wall, or dense evergreen planting strip with

-6-

no salvage exceeding the height of the fence, which must be six to eight feet high.  [Dkt. # 30-7];
CZO § 19.7(U).

In December 2002, Defendant County's planning commission issued Rifkin the special use
permit, subject to a variety of conditions.  The conditions included requirements for fencing and for
a tree perimeter; blacktop on the surface of accesses to the highway; hours of operation limited to
8:00 a.m. to 4:30 p.m. on Monday through Friday, and 9:00 a.m. to 1:00 p.m. on Saturday; and dust
control measures, such as use of a limestone base.  [Dkt. # 35-4].  Because the permit included the
application, Defendants can accurately assert that the permit includes an obligation to abide by all
terms of the CZO and to meet the conditions required for the permit's issuance, else Defendant
County could invalidate the permit.

Approximately one year later, in December 2003, apparently in response to a variety of
complaints from Rifkin's neighbors, Defendant Derocher drafted a memo regarding Rifkin's special
use permit.  He stated that Rifkin was not in compliance with its permit, in that it had not installed
a limestone base to control dust, and recommended additional conditions on Rifkin's permit, to be
effective immediately, to avoid anticipated litigation.

According to Rifkin's general manager, Jefry Weinberg, about 85% of Rifkin's intake
collected in a large pile, which some of the exhibit photographs show exceeding the height of the
privacy fence.  Defendant County's former zoning administrator, James Briese, stated that the pile
was sometimes as tall as a house.  He also stated that he sometimes observed operations on the site
at 7:45 a.m., therefore commencing before 8:00 a.m.  Defendants also contend that Rifkin violated
the CZO's 50-foot roadside setback restrictions and created a safety risk when a long line of trucks
waited on the highway shoulder in the morning.  Indeed, Rifkin's general manager admitted that the

-7-

site did not comply with setback requirements, at least on the street side, and that vehicles used that setback instead. A variety of neighbors complained, via affidavit, about noise, vibrations, and dust that resulted from the process of moving and compacting metal. West Branch Township's supervisor, Steve Steinhauser, served as a mediator at three meetings at which representatives of Rifkin and Defendant County, as well as neighbors, attended.

After those efforts at conciliation failed, Defendant County sought injunctive relief in state court in January or February 2004. Rifkin countersued. On December 2, 2004, with that litigation still pending, Defendant County's planning commission held a special meeting. There, after taking public comment, the commission unanimously voted to add a condition to Rifkin's special use permit that no metal could be stacked or stored on the ground outside its building. Based on letters exchanged between counsel for Rifkin and Defendant County on December 14 and 29, 2004, it appears that Rifkin and Defendants negotiated a temporary resolution that included dismissing the state court litigation without prejudice. In return, Rifkin would not appeal the planning commission's determination that no scrap be stored on the ground overnight.

Several months later, on April 12, 2005, Defendant Derocher sent Rifkin a cease and desist letter. The following day, the Ogemaw County Circuit Court granted Rifkin a temporary restraining order to permit it to pursue its administrative remedies without having to cease and desist in its operations. On April 20, 2005, Rifkin appealed the cease and desist letter to Defendant County's zoning board of appeals ("ZBA"). On June 9, 2005, Defendant County's ZBA determined that Rifkin had continuously violated the zoning ordinance due to the noise, dust, and vibration from

Rifkin's operations;[3] and because Rifkin operated on too small a lot for a junk or salvage yard.

Defendants assert (albeit without record citation) that the state court reversed the cease and desist order in August 2005, because of a lack of notice to Rifkin. According to Rifkin's second amended complaint (also without record citation), the state court reversed the cease and desist order on October 17, 2005.

On October 18, 2005, a representative of Rifkin sought Defendant Derocher's approval, as the representative of the relevant zoning authority as required by a state form, to renew Rifkin's vehicle dealer's license from the state. *See* [Dkt. # 30-3]. The state requires that such licenses are renewed on an annual basis, and that the premises must "meet all applicable zoning and municipal requirements." According to the notice regarding renewal of that license, "[r]enewal applications will <u>not</u> be accepted after December 31. Application for a new original license will be required if your renewal application is not received by December 31." [Dkt # 28-2]. The notice concluded with an alert that dealers without renewed licenses by January 1 were not permitted to conduct business. *Id*.

On October 21, 2005, Defendant Derocher issued Rifkin a "30-Day Notice of Zoning Violations," which warned Rifkin that it had 30 days to correct violations, else a stop work order would issue. The notice cited Rifkin for insufficient setbacks for the front and rear yards.[4] The

---

[3] CZO § 2.9 provides: "Every use shall be so conducted and operated such that it is not obnoxious or dangerous by reason of heat, glare, dust, noise, vibration or odors beyond the lot on which the use is located." [Dkt # 30-6].

[4] CZO § 14.4 [Dkt # 30-7], identifies the "dimensional requirements" for "any use" in a district zoned B-3, highway business:

. . . Front yard: The minimum front yard setback in this District shall be fifty (50) ft. No parking area, except for driveways, shall be located within twenty (20) ft. of the right-of-way line. This required parking setback area shall be planted and maintained as a landscaped yard.

notice also cited Rifkin for improperly storing materials or equipment in a yard or parking area.[5]

Citing to Chapter 17 of the CZO, the notice also required Rifkin to comply with its site plan, as approved by the planning commission, in order to operate within its special use permit. According to the notice, Rifkin had an additional storage bin and storage bins at an improper location, in contrast to its site plan. Finally, the notice cited Rifkin for dust, noise, vibration and odors, in violation of CZO § 2.9.

Not insignificantly, the CZO addresses the revocation of a special use permit and also the length of its validity. First, with respect to revocation, CZO § 19.5 provides:

> The Planning Commission may revoke a Special Land Use approval, or take any other action allowed by law, if the applicant fails to comply with any of the applicable requirements in this Chapter, any conditions placed on the approval by the Planning Commission, or any other applicable provisions of this Ordinance. Prior to revoking a Special Land Use approval, the Planning Commission shall conduct a public hearing and give notice of such a hearing in accordance with Section 19.2 B.

[Dkt # 30-7]. Second, with respect to the term of a special use permit, CZO § 19.4 provides:

> A Special Land Use approval shall be valid for two (2) years from the date of approval, with up to one (1) year extension, unless approval is revoked as provided in Section 19.5, or the Special Land Use has been initiated, or construction necessary for such use has been initiated and is proceeding meaningfully towards completed, in which case the approval shall remain valid indefinitely.

[Dkt # 30-7].

---

. . . Rear yard: The minimum rear yard setback in this District shall be thirty (30) ft.; provided that where a rear yard abuts any Residential District, a minimum of twenty (20) ft. of such setback area shall contain a landscaped buffer composed of evergreen trees or a fence suitable to provide visual screening from adjacent property and shall not be paved or used for parking, loading, vehicle maneuvering, or storage. . .

[5] The notice referred to CZO § 19.7(M)(5), which states that open air businesses have specific special land use conditions, and CZO § 19.7(U)(5) [Dkt # 19-3], regarding junk or salvage yards in industrial zones, provides that, "[s]tored materials shall not be placed outside the required fenced or screened area and shall be stored in a manner so as not to be visible from adjoining properties or rights-of-way. In no case shall salvage or junk be stored at a height exceeding the height of the storage area fence or screen."

On October 24, 2005, Defendant Derocher denied approval on Rifkin's vehicle dealers' license based on his determination that the location was not being used in conformity with the zoning provisions. On November 2, 2005, Rifkin appealed to Defendant County's ZBA. *See* [Dkt. # 29-8]. In its appeal, Rifkin maintained that the denial of approval of its license application stemmed from Defendants' attempt to force it to shut down. Rifkin stated that, in light of its willingness to agree not to operate until resolution of the contested zoning issue, Defendant County had no rational reason to deny the application to renew its dealers' license. According to Rifkin's vice president's affidavit, Rifkin could not have continued as an economically viable operation without that license. The appeal was set for hearing on December 7, 2005.

According to Defendants, West Branch Township, to which Defendant County eventually transferred zoning authority over Rifkin's property, published its new zoning ordinance, West Branch Township Zoning Ordinance ("TZO") on November 17, 2005. [Dkt. 37-3]. TZO § 1.6 provides that the ordinance becomes effective eight days after its publication. Thus, the TZO appears to have become effective on November 25, 2005. Then-applicable state law provided that, "[a] township in which an ordinance enacted under the township zoning act, [(TZA), Mich. Comp. Laws §§ 125.271 *et seq*.,] is in effect is not subject . . . to an ordinance, rule, or regulation adopted under [the County Zoning Act (CZA), Mich. Comp. Laws §§ 125.201 *et seq*.]." Mich. Comp. Laws § 125.239 (repealed by 2006 P.A. 110). Notably, the TZO allows non-conforming uses. TZO § 3.4 provides that a structure or use – lawful on the effective date of the ordinance but unlawful under the ordinance itself – may continue, subject to certain conditions not applicable here. *See also id.* at § 3.1.

On November 22, 2005 Defendant County voted to transfer zoning authority to West Branch

Township. In his deposition, West Branch Township's supervisor confirmed the fact of that transfer. He stated in his deposition and in an affidavit, however, that the township became the zoning authority on December 16, 2005. These statements appear to conflict with Defendants' assertion that the TZO was enacted on November 17, 2005 and effective on November 25, 2005.

On November 29, 2005, Defendant Derocher issued a stop work order to Rifkin. Relying on CZO § 21.1(5)(a),[6] Defendant Derocher ordered Rifkin to stop all operations that violated the noise/dust/odor provision of the county zoning ordinance, including halting operating heavy equipment, operating equipment or vehicles that produce more noise or exhaust than would be reasonable on a roadway, and dumping scrap in bins or on the ground in such a manner that causes noise or vibration. Notably, Defendants may not have had authority to issue the stop work order, as West Branch Township may already have attained its status as the zoning authority over Rifkin's property.

That same day, November 29, 2005, Rifkin appealed the stop work order to Defendant County's ZBA. At that time, an appeal from a county zoning decision operated as an automatic stay, barring emergency circumstances. Mich. Comp. Laws § 125.222, *repealed by* 2006 Mich. Pub. Acts 110; CZO § 20.3(C). The appeal form on this issue, unlike Rifkin's appeal of the denial of its dealer's license, does not reflect a date on which the matter was set for hearing. In this appeal, Rifkin objected that Defendant Derocher's determination sought to override the previously issued special use permit, as the uses objected to were apparent when the permit issued. Rifkin also

---

[6] CZO § 21.1(5)(a) provides in relevant part:

Upon notice from the Zoning Administrator . . . that any use is being conducted or that any work on any building or structure is being executed contrary to the provisions of this Ordinance or in an unsafe and dangerous manner, such work or use shall be immediately stopped.

-12-

contends that Defendant Derocher relied on the subjective complaints of Rifkin's neighbors, rather than objective criteria.

On December 7, 2005, Defendant County's ZBA met and addressed Rifkin's appeals. The unofficial meeting minutes [Dkt. # 30-2] reflect that both appeals, as to the denial of approval of the dealer's license and the stop work order, received attention. However, the denial of the approval of the dealer's license was tabled until January 4, 2006, in order to allow Defendant County to obtain legal counsel. It is also not apparent that a determination was made with respect to the issues prompting the stop work order, beyond the fact that a consensus may have been reached that Rifkin's site plan should be enforced.

The next day, on December 8, 2005, Rifkin's counsel sent a letter to an attorney who appears to have represented Defendant County regarding the appeal. In that letter, Rifkin's counsel noted the limited time to renew the dealers' vehicle license, until December 31, and responded to concerns from the prior night's hearing that Rifkin would not expand its operations if the County approved renewal of the license.

Also on December 8, 2005, Rifkin's counsel sent a letter to Defendant County, seeking confirmation that Defendant County no longer had jurisdiction over Rifkin and its appeals, pursuant to the County's resolution dated November 22, 2005, transferring planning and zoning authority to West Branch Township. [Dkt. # 30-3]. If the situation were confirmed, Rifkin's counsel indicated that it would "not be necessary for [the ZBA] to decide the matter that was tabled," which was the denial of approval of the vehicle dealer's license. Rifkin's counsel also indicated that if the situation were confirmed, it sought to "remove our 11/29/05 appeal [of the stop work order] from the January agenda." *Id.*

-13-

Several day later, in a letter dated December 14, 2005, Defendant County's counsel advised the West Branch Township board members of the status of Defendant County's interactions with Rifkin.  First, he stated that Defendant County would lose jurisdiction over disputed issues with Rifkin as of the effective date of the TZO, which he described at December 16, 2005.  He stated that "as of December 16, 2005 your township is responsible for enforcing any violations of the zoning ordinance [by Rifkin] existing or in the future."  [Dkt # 35-8].  He recited the chronology of the 30-day notice, Rifkin's response, and a hearing before the ZBA that determined certain violations of the site plan and zoning ordinance by Rifkin.  He added: "Due to the current state of this matter with the change in jurisdiction no action has been taken on these violations."  *Id*.  He also advised of the issue regarding the denial of the vehicle dealer's license, Rifkin's appeal, the tabling of that appeal, and the timing concerns for Rifkin on that issue.  He noted that he had explored the possibility of granting Rifkin a temporary zoning change, conditioned on a move, but that a state official advised that such an arrangement would not be permissible.  He concluded with his opinion that Rifkin's current operation would not be permitted based on its zoning under the TZO and advised that the township may wish to seek legal counsel.

On December 19, 2005, West Branch Township's supervisor approved Rifkin's dealer's vehicle license as in compliance with local zoning.  Apparently contemporaneously, the township subjected that approval to Rifkin's agreement to a number of conditions, including relocation to another property.  Rifkin insists that Defendants' conduct forced it to accept this option of negotiating with West Branch Township to continue operations while constructing a new facility, rather than starting a new operation in a different location.  In its second amended complaint, Rifkin asserts that relocation required the investment of nearly $777,000 in the new site.

In a letter dated December 20, 2005, Defendant County confirmed receipt of Rifkin's letter, dated December 8, 2005, which had sought confirmation that Defendant County no longer had jurisdiction over it or its appeals. [Dkt. # 30-3]. Finally, according to unofficial notes from the January 4, 2006, ZBA meeting, it appears that Rifkin's appeal of the denial of the vehicle dealer's license renewal approval was taken off the table and dismissed based on a lack of jurisdiction. [Dkt. # 30-5]. It also appears that the ZBA determined that Rifkin withdrew the November 29, 2005, appeal of the stop work order in a timely fashion. *Id.*

As previously stated, Rifkin commenced suit in this Court on May 25, 2006.

## II

Under Rule 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must view the evidence and draw all reason able inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). A fact is "material" if its resolution affects the outcome of the case. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics and Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of

-15-

material fact.  *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).

The party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts.  *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002).  The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative showing with proper evidence in order to defeat the motion.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252. The party who bears the burden of proof must present a jury question as to each element of the claim, *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000), rather than raise only "metaphysical doubt as to the material facts."  *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes.  *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

### III

As previously stated, Defendants' motion for summary judgment primarily contends that Rifkin cannot establish a regulatory takings claim under the balancing test established in *Penn Central*, 438 U.S. 104, and that Rifkin cannot establish a procedural due process violation because Defendants' actions were not deliberately or recklessly taken.  At this juncture, a brief review of the

Court's May 21, 2008 order with respect to these claims is useful.

First, with respect to Rifkin's potential regulatory takings claim, based on either the denial of the vehicle dealer's license approval, or the stop work order, in its prior opinion, the Court explained that *Penn Central* and later case authority would require the Court to consider the following factors: (1) the economic effect of the regulation on a claimant; (2) the extent to which the regulation interferes with investment-backed expectations; and (3) the character of the government action, such as whether the action adjusts public benefits or is a physical invasion. The Court also explained that a regulatory takings claim would be subject to the procedural requirements set out in *Williamson County*, 473 U.S. 172. The Court noted that it was possible that Rifkin could establish such a claim, but that it was not clear that Rifkin was advancing such a claim, due to a lack of clarity in the amended complaint and subsequent filings. Rifkin's second amended complaint does not clarify whether it advances a regulatory takings claim under *Penn Central*. Yet, in responding to Defendants' motion now before the Court, Rifkin has not contested Defendants' characterization of its claim as a takings cause of action. Thus, the Court will construe it as such.

Second, with respect to Rifkin's due process claim, in its prior opinion, the Court noted that Rifkin may have sought to advance a procedural due process claim based on the "procedural vacuum," or lack of availability of appeal procedures, when Defendant County transferred its zoning authority and oversight responsibilities to West Branch Township. Neither Rifkin nor Defendants had addressed the issue. Without reaching a conclusion, the Court noted that it was possible that such a procedural due process claim may exist. In its second amended complaint, Rifkin has not specifically identified whether its due process claim is "procedural," or "substantive." However, in Defendants' motion now before the Court, Defendants explicitly characterize Rifkin's claim

solely as a procedural due process claim and Rifkin has not responded to or challenged that characterization.  Thus, the Court will construe it as such.

Defendants also revive the following four arguments made in earlier motions: (1) Rifkin's takings claim is not ripe because Rifkin did not pursue available state procedures and its procedural due process claim is subsumed by its takings claims; (2) Rifkin cannot sustain a procedural due process claim because Rifkin did not have a constitutionally-protected interest in the special use permit when the permit was conditioned on continued compliance with its terms and all other applicable requirements of the zoning ordinance; (3) Defendant County cannot be held liable under § 1983 because Rifkin has not alleged a custom, policy, or plan leading to violations of Rifkin's rights; and (4) Rifkin cannot establish "causation in fact" due to the intervening and superseding "win-win" agreement between Rifkin and West Branch Township.

Before proceeding to the details of Defendants' arguments that they are entitled to summary judgment, the Court will address Rifkin's response.  Rifkin's response to Defendants' motion presents four main arguments, without citation to any legal authority.

## A

First, Rifkin contends that Defendants have presented "an untimely motion for reconsideration" of the Court's prior order, rather than a motion for summary judgment, in contravention of E.D. Mich. LR 7.1(g)(3).  In light of the filing of Rifkin's second amended complaint and the Court's amendment of the case management and scheduling order providing a new deadline for dispositive motions, Rifkin's argument is unfounded.

Second, Rifkin contends that Defendants have not presented a "basis for determining that the factual issues which precluded summary disposition in Defendants' favor back in 2008 no longer

-18-

exist." This argument is unavailing because the Court's order was at least in part premised on the fact that Rifkin had not clearly identified the legal theories that it sought to advance. Whether any particular fact is "material" to the summary judgment analysis is necessarily dependent on the legal theories advanced. Thus, the Court's prior opinion determined that Defendant had not demonstrated an entitlement to summary judgment, and that factual issues potentially material to the analysis had not been addressed by the parties, rather than that Rifkin had identified genuine issues of material fact.

Third, Rifkin argues that jury questions are raised with respect to Defendants' true motivations or reasons for its interactions with Rifkin. For example, Rifkin contends that Defendants' allegation that Rifkin did not comply with setback requirements was "merely pretextual." Rifkin contends that Defendants "wanted to close down Rifkin's operation because of perceived excessive noise and vibration," yet the planning commission had always known that Rifkin would be compacting down scrap with heavy machinery. While Defendants' motivation may be disputed, such a dispute is not "material" to Rifkin's takings or procedural due process claims, as will be later addressed.

Similarly, Rifkin contends that whether Defendant Derocher was "negligent" or "grossly negligent," presents a question of fact because it involves a determination of the mental processes of Defendant Derocher. Rifkin explains that it intends to argue that Defendant Derocher's decision to continue his attempts to close the Rifkin site even after losing the authority to take such action was an intentional act sufficient to support Rifkin's procedural due process claim. While this may be true, or present a factual issue, resolution of Rifkin's takings and due process claims do not depend on Defendant Derocher's level of culpability, as will later be addressed. Thus, the factual

-19-

issue is not "material."

Fourth, and finally, Rifkin contends that "Defendants improperly ask this Court to determine the economic impact of its improper acts as a matter of law." Rifkin challenges Defendants' argument that the maximum diminution in value of the parcel is $56,093, or 18%, because Rifkin has continuously marketed the parcel but has not received a single offer at any price. As will be discussed below, Rifkin's argument underscores the fact that its claims are not ripe for review.

B

Defendants spend a significant portion of their brief analyzing Rifkin's takings claim under the factors emphasized by cases following *Penn Central*. Similarly, Defendants spend a significant portion of their brief analyzing whether Defendant Derocher's conduct was sufficiently culpable to form the basis of a due process violation. A detailed summary of these arguments is unnecessary as the Court will grant Defendants' motion on other grounds. The analysis of Rifkin's takings and procedural due process claims must begin with the threshold issue of ripeness.

Whether a plaintiff's claims are ripe affects a federal court's subject matter jurisdiction. "Ripeness is a mixture of Article III concerns about actual cases or controversies and prudential concerns about the appropriate time for a court to make a decision." *Seiler v. Charter Twp. of Northville*, 53 F. Supp. 2d 957, 961 (E.D. Mich. 1999) (quoting *Cmty. Treatment Ctrs., Inc. v. City of Westland*, 970 F.Supp. 1197, 1209 (E.D. Mich. 1997)). "Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Id.* (quoting *Bigelow v. Mich. Dep't of Natural Res.*, 970 F.2d 154, 157 (6th Cir. 1992)). The doctrine is "designed to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Kentucky Press*

-20-

*Ass'n v. Kentucky*, 454 F.3d 505, 509 (6th Cir. 2006) (internal quotations omitted).  The question

of ripeness arises in those cases "anchored in future events that may not occur as anticipated, or at

all."  *Id.* (internal quotations omitted).

   The U.S. Supreme Court has definitively stated that "a claim that the application of

government regulations effects a taking of a property interest is not ripe until the government entity

charged with implementing the regulations has reached a final decision regarding the application

of the regulations to the property at issue." *Williamson County*, 473 U.S. at 186.  The Supreme

Court has also held that for a takings claim to be ripe, a plaintiff must "seek compensation through

the procedures the State has provided for doing so." *Id.* at 194.  *See also Pearson v. City of Grand*

*Blanc*, 961 F.2d 1211, 1214 ("In cases where plaintiff claims that the zoning is so stringent as to

constitute a taking without just compensation, the Supreme Court requires what amounts to

exhaustion of state judicial remedies, including the bringing of an inverse condemnation action, if

the state affords such a remedy.").  The Court explained the rationale for its holding as follows:

> The Fifth Amendment does not proscribe the taking of property; it proscribes taking without
> just compensation.  Nor does the Fifth Amendment require that just compensation be paid
> in advance of, or contemporaneously with, the taking; all that is required is that a reasonable,
> certain and adequate provision for obtaining compensation exist at the time of the taking.
> If the government has provided an adequate process for obtaining compensation, and if
> resort to that process yields just compensation, then the property owner has no claim against
> the [g]overnment for a taking. . . . [Thus], if a State provides adequate procedures for seeking
> just compensation, the property owner cannot claim a violation of the Just Compensation
> Clause until it has used the procedure and been denied just compensation.

*Williamson County*, 473 U.S. at 194-95 (internal quotations and citations omitted).  *See also*

*Pearson*, F.3d at 1214-15 ("The rationale for these requirements in taking cases is that the federal

court cannot know what has been taken or what compensation has been afforded until state remedies

have been utilized.  Until that time, the federal court cannot determine whether a taking has

occurred, whether compensation is due, or, if it has been afforded, whether it is just.").

In *Braun v. Ann Arbor Charter Township*, 519 F.3d 564 (2008), the Sixth Circuit addressed the ripeness of both a takings and procedural due process claim, and determined that neither was ripe for review. In *Braun*, the plaintiffs had applied to the township board for rezoning of their property based on an appraiser's opinion that the rezoning was necessary for the property to have any economically viable use. 519 F.3d at 567-68. After the township denied their application, the plaintiffs approached the township about obtaining a variance from the zoning board of appeals. *Id.* at 568. The township indicated, via letter, that "such an appeal was unavailable because the zoning board does not have the jurisdiction to 'change a [zoning classification] for any property, grant a use variance, or hear any other appeal from the Township Board.' " *Id.* The plaintiffs did not appeal to the zoning board of appeals, but brought suit in state court alleging, inter alia, takings claims. *Id.* The trial court found, and the court of appeals affirmed, that the claims were not ripe for review because "the plaintiffs had not sought and been denied a use variance from the Zoning Board of Appeals." *Id.*

Subsequently, the plaintiffs sought a use variance from the Zoning Board of Appeals, which denied the request based on a lack of jurisdiction. *Id.* Rather than return to state court, the plaintiffs filed a suit in federal court, alleging, inter alia, deprivations of procedural due process and the Takings Clause. *Id.* The district court determined that the plaintiffs' claims were not ripe and the Sixth Circuit affirmed.

Beginning with the takings clause claims, the Sixth Circuit explained that two issues are relevant to the ripeness analysis: "first, whether the initial decision maker . . . has arrived at a 'definitive position on the issue that inflicts an actual, concrete injury' (the finality requirement);

-22-

and second, whether the state has denied just compensation based on that injury (the remedies requirement). *Id.* at 569 (quoting *Williamson County*, 473 U.S. at 193). The Sixth Circuit easily found that the plaintiffs had not met the "remedies requirement" because "they never sought a remedy on the merits in state court and were thus not denied just compensation in state court, as required by *Williamson County*." *Id.* at 570 (also quoting *Macene v. MJW, Inc.*, 951 F.2d 700, 704 (6th Cir. 1991) ("In Michigan, the doctrine of inverse condemnation is long recognized and constitutionally established.")).

In affirming the trial court's dismissal of the plaintiffs' procedural due process claim, the Sixth Circuit determined that "the claim is ancillary to and includes the same facts as the takings claim and should be governed by the takings claim theory requiring exhaustion of state remedies." *Id.* at 571-72.[7] The court noted that whether the *Williamson County* requirements apply to a plaintiff's constitutional claims depends on an analysis of "when the alleged injuries occurred." *Id.* (citing *Bigelow*, 970 F.2d at 159, and *Harris v. County of Riverside*, 904 F.2d 497, 500 (9th Cir. 1990)). In *Bigelow*, the Sixth Circuit found that the plaintiffs' procedural due process claim was "ancillary" to the takings claim because the plaintiffs "simply assert[ed] that they were not given an effective opportunity to defend their fishing rights before they were taken." 970 F.2d at 159. Thus, there was no "instantaneous infliction of a concrete injury" independent from the taking. *Id.* In contrast, in *Nasierowski*, 949 F.3d at 894, in which the plaintiff had not alleged a takings claim, the court found that the procedural due process claim was "instantly cognizable in federal court without requiring a final decision on a proposed development from the responsible municipal

---

[7] In an alternate holding, the court determined that the plaintiffs had not identified a factual basis for a constitutionally-protected property interest. *Id.* at 572.

agency," when the plaintiff "challenged the local government's action of rezoning his property without first giving him either notice of the change or a hearing." 949 F.2d at 894. As the Sixth Circuit subsequently explained in *Bigelow*, *Nasierowski* stands for the proposition that " the final decision rule does not apply when the denial of procedural due process itself creates an injury." *Bigelow*, 970 F.2d at 160.

Based on the distinction between cases like *Bigelow* and *Nasierowski*, the *Braun* court found that the plaintiffs' procedural due process claim was ancillary to the takings claim because "the thrust of the plaintiffs' due process claim is that the Township's refusal to rezone their property was a taking, one resulting from a policy bias . . . against low-income housing proposals." *Braun*, 519 F.3d at 572. The court further noted that "if the plaintiffs were to succeed in their state-court takings claim, no procedural due process injury would likely exist." *Id.* Finally, the court emphasized:

> Until the state courts have ruled on the plaintiffs' inverse condemnation claim, this court cannot determine whether a taking has occurred, and thus cannot address the procedural due process claim with a full understanding of the relevant facts. Furthermore, addressing the plaintiffs' procedural due process claim at this stage of the proceedings would allow future plaintiffs effectively to circumvent the ripeness requirement for takings claims simply by attaching a procedural due process claim to their complaint.

*Id.* (quoting *Bigelow*, 970 F.2d at 160).

Turning now to the application of the law to the circumstances of the case now before the Court, it is apparent that Rifkin's takings and procedural due process claims are not ripe for adjudication. First, with respect to Rifkin's takings claim, Rifkin's second amended complaint alleges that Defendants' actions with respect to the vehicle dealer's license and the issuance of a stop work order "had the practical effect of reversing the previous grant of the special use permit. . . . " In other words, Defendants' actions, purporting to enforce the CZO, amounted to a taking of Rifkin's property interest in the special use permit. Such a claim is subject to the "finality" and

"remedy" requirements of *Williamson County*. Rifkin did not pursue an inverse condemnation claim in state court, thus, Rifkin has not satisfied the remedy requirement and its takings claim is not ripe.

Second, with respect to Rifkin's procedural due process claim, Rifkin's second amended complaint alleges that Defendants violated its due process rights by denying approval of the vehicle dealer's license and issuing a stop work order at a time when Defendants were aware that their actions would not be reviewable and would be particularly damaging to Rifkin because Defendant County was planning to cede jurisdiction to West Branch Township. Notably these are the same actions that Rifkin alleges amount to an illegal taking of their property by Defendants. Thus, the same facts that underlay Rifkin's takings claim also underlay Rifkin's procedural due process claim. Quite like the plaintiffs in *Bigelow*, the thrust of Rifkin's claim is that it was denied an effective opportunity to contest Defendants's actions, or defend its property, which amounted to a taking of Rifkin's property. Thus, Rifkin's procedural due process claim is ancillary to its takings claim and not ripe for review.

Based on the conclusions reached by the Court thus far, that Rifkin's takings and procedural due process claims are not ripe for review, the Court will not address the remainder of Defendants' arguments as they are unnecessary to the resolution of Defendants' motion.

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment [Dkt. # 37] is **GRANTED**.

It is further **ORDERED** that Plaintiffs' second amended complaint is **DISMISSED FOR LACK OF JURISDICTION**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: April 17, 2009

-25-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 17, 2009.

s/Tracy A. Jacobs
TRACY A. JACOBS